UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WHITEHOUSE CONDOMINIUM
GROUP, LLC,

        Plaintiff,

                                  Case No. 12-14924
                                  HON. GERSHWIN A. DRAIN

vs.


THE CINCINNATI INSURANCE
COMPANY,

        Defendant.

_____/

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#10] AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#8] AND
CANCELLING JULY 29, 2013 HEARING

**I.    INTRODUCTION**

Presently before the Court are Cross-Motions for Summary Judgment, filed on April 1, 2013 and April 29, 2013. Defendant objects to Plaintiff's Motion on the basis of it being untimely, but in the interests of justice, the Court will proceed to the merits of the Motions. The parties agree that the sole issue to be decided by this Court is the meaning of the term "obsolescence" as used in the definition of actual cash value in Plaintiff's insurance policy. Upon review the Court concludes that oral argument will not aid in the resolution of this matter, so the pending Motions are resolved on the briefs and the hearing scheduled for July 29, 2013 is

cancelled.  *See* E.D. Mich. L.R. 7.1(f)(2).  For the reasons listed below, Plaintiff's Motion is GRANTED and Defendant's Motion is DENIED.


## II.      PROCEDURAL AND FACTUAL HISTORY

The parties are in agreement about the facts of this case, which are as follows.  On November 4 and 5, 2010, a fire damaged a condominium building owned by Plaintiff that was located at G3247 Beecher Road, Flint, Michigan.  The property was insured by Defendant under Policy No. EPP0023125.  At issue is the actual cash value ("ACV") of the building at the time of the fire.  ACV is defined as, "replacement cost less a deduction that reflects depreciation, age, condition and obsolescence."  Def.'s Mot. for Summ. J. Ex. 1, at 47.  Plaintiff claims that the building was worth $2,767,730.00.  Defendant determined the value of the building was $1,187,660.38 and has already paid Plaintiff that amount.  The discrepancy in value comes from contrary understandings of the term "obsolescence" as used in the definition of ACV.  Defendant claims that "obsolescence" refers to both functional and economic obsolescence.  Plaintiff, on the other hand, argues that only functional obsolescence was meant to be deducted in the calculation of actual cash value.

The dispute over the meaning of obsolescence led Plaintiff to demand appraisal.  Both parties have selected appraisers, but Plaintiff has requested this Court to provide a construction of the term obsolescence before the appraisal may take place.  Defendant counters that a construction is not necessary since a plain reading of the term includes both functional and economic obsolescence.  Plaintiff filed suit on October 9, 2012 seeking a declaration of the rights of the parties.  Defendant filed the present Motion for Summary Judgment on April 1, 2013.

Plaintiff responded with its own Motion for Summary Judgment on April 29, 2013.  Defendant filed a Reply on May 13, 2013.

## III.    LAW AND ANALYSIS

### 1. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### 2. Interpretation

Before interpreting the Contract, the Court must first determine that it is unambiguous. Whether contract language is clear or ambiguous is a question of law. *Collins v. National General Ins. Co.*, 834 F. Supp. 2d 632 (E.D. Mich. 2011). If the Court decides that the contract is ambiguous, then the meaning of the contract becomes a question of fact. *See 51382 Gratiot Ave. Holdings, LLC v. Chesterfield Development Co., LLC*, 835 F. Supp. 2d 384, 391 (E.D. Mich. 2011). However, if the language is clear, then the meaning of the contract is a question of law that may be properly decided at the summary judgment stage. *See Aqua Group LLC v. Federal Ins. Co.*, 620 F. Supp. 2d 816 (E.D. Mich. 2009). Neither party claims that the insurance

policy is ambiguous, nor does this Court find reason to think it is.  Accordingly, the Court may

interpret the contract at this summary judgment stage.

The relevant language of the insurance policy is as follows:

**SECTION D. LOSS CONDITIONS**

* * *

**7.     Valuation**
We will determine the value of Covered Property in the event of "loss" as follows:

a.      At "Actual Cash Value" as of the time of "loss" . . .

* * *

**SECTION G. DEFINITIONS**

**1.     "Actual Cash Value"** means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

Def.'s Mot. for Summ. J. 5.

The parties rely on different sources for the definition of obsolescence.  Defendant cites

to Black's Law Dictionary (9th ed. 2009), which states:

**OBSOLESCENCE**
**obsolescence** . . . **1.** The process or state of falling into disuse or becoming obsolete. **2.** A diminution in the value or usefulness of property, esp. as a result of technological advances. • For tax purposes, obsolescence is usu. distinguished from physical deterioration. Cf. depreciation.
***economic obsolescence.*** Obsolescence that results from external economic factors, such as decreased demand or changed governmental regulations. — Also termed *external obsolescence*. Cf. *functional obsolescence*.
***external obsolescence.*** See *economic obsolescence*.
***functional obsolescence.*** Obsolescence that results either from inherent deficiencies in the property, such as inadequate equipment or design, or from technological improvements available after the use began. Cf. *economic obsolescence*.

Def.'s Mot. for Summ. J. 10.  Based on this definition, Defendant concludes that the common and ordinary meaning of "obsolescence" is clear and includes both functional and economic obsolescence.  Plaintiff disputes that Black's Law Dictionary is the appropriate source for the "standard dictionary definition" of the term.  Instead, Plaintiff cites to Random House Webster's College Dictionary, which states:

> Obsolescent 1. Becoming obsolete; *passing out of use as a word.* 2. Intending to become out of date, as machinery, etc.
>
> Obsolete 1. Fallen into disuse, or no longer in use: *an obsolete word.* 2. Of a discarded type; out of date: *an obsolete battleship.* 3. Effaced by wearing down or away."

Pl.'s Mot. for Summ. J. 9.  Based on this definition, Plaintiff argues that there is no agreement on whether both functional and economic obsolescence were intended to be included in the insurance policy.

The Court agrees with Plaintiff.  Neither definition provides an explanation for whether functional and economic obsolescence are included in the term "obsolescence".  As to the definition provided in Black's Law Dictionary, it is not at all clear that the use of the term "obsolescence" necessarily includes the three types of "obsolescence" listed underneath the definition.  Admittedly, the three types of obsolescence are related, but they are different terms. Nor is Plaintiff's "standard dictionary definition" of any help to this inquiry.  Simply put, dictionary definitions do not determine the outcome of the case.  Instead, the Court will examine relevant case law for guidance on the issue.

### 3. Relevant Case Law

In their briefings, the parties acknowledged that the question presented is of first impression in this Court.  Further, no Michigan court has dealt squarely with this issue either.  The lack of precedent means this Court must first determine if there is any appropriate authority to adopt.  Plaintiff urges this Court to adopt the reasoning of *SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Properties, LLC*, 445 F. Supp. 2d 320 (S.D.N.Y. 2006) (hereinafter *WTC*).  While Defendant maintains that there are distinctions between *WTC* and the present case, *WTC* addressed an almost identical insurance policy clause in a similar setting in a well reasoned manner.  As such, this Court adopts Judge Mukasey's thoughtful opinion.  Defendant also brought to the Court's attention several tax assessment cases that interpreted "obsolescence" as including both functional and economic obsolescence.  While these cases are considered below, they are inapposite given the differences between this case and tax assessments.

### A. WTC

In *WTC*, Judge Mukasey was tasked with determining the meaning of obsolescence as used in the definition of actual cash value in an insurance policy.  Actual cash value was defined as, "the cost to repair, rebuild or replace the lost or damaged property, at the time and place of the loss, with other property of comparable size, material and quality, less allowance for physical deterioration, depreciation, obsolescence and depletion."  *WTC*, 445 F. Supp. 2d at 327.  Though not identical, the definition of ACV was very similar to the current case.  The insurers in that case argued that the definition required considering all pertinent evidence under the broad evidence rule, including the market value of the property.  In essence, they argued for a broad definition that included both functional and economic obsolescence.  The insureds, on the other hand, argued that the plain meaning of the provision is such that market value should not be

considered in the appraisal, thus a narrow definition of obsolescence that only considers functional obsolescence.

Judge Mukasey ruled in favor of the insureds. First, it was determined that, contrary to the position of the insurers, the policy language did not intend to include the broad evidence rule. That issue is irrelevant as neither party claims that the broad evidence rule applies in this case. *See* Def.'s Mot. for Summ. J. 13 n.9. Of importance to this case is why Judge Mukasey determined that "obsolescence" only refers to functional obsolescence. By examining the distinction between functional and economic obsolescence, Judge Mukasey observed that functional obsolescence necessarily results in a reduction of the replacement cost. Economic obsolescence, on the other hand, may result in "positive changes in income and operating costs" that could actually increase the market value above replacement cost. *WTC*, 445 F. Supp. 2d at 350. As worded, the insurance policy only allows for deductions in value since it says "less allowance for . . . obsolescence." *Id.* Given that only deductions are possible, Judge Mukasey concluded that economic obsolescence, and its possibility for increased value, was not included in the determination of ACV.

Additionally, Judge Mukasey stated that if the parties wanted ACV to be determined by market value they would have said as much, especially since the term was used elsewhere in the contract. Given the importance of the term, it is not likely that the parties would have forgotten to add it or purposefully omit it. The failure to insert "market value" in the definition of ACV led Judge Mukasey to conclude that the parties did not intend for it to be considered.

While the similarity of the two cases is apparent, Defendant raises two arguments for why the reasoning of the case should not be adopted. First, Defendant claims that since the

definition of ACV in *WTC* contains the modifying term "physical" there is greater reason to believe that the *WTC* contract was intended to only cover functional obsolescence. The second reason offered by Defendant is that the holding of *WTC* is based on New York rules of construction that are materially different than Michigan law.

Defendant's first objection is without merit as the reasoning of *WTC* did not depend on the use of the modifier "physical." Speaking of his determination that only functional obsolescence was intended, Judge Mukasey said, "this conclusion does not depend on the Silverstein Parties' grammatically strained reading of the ACV definition or their claim that the terms in question are inherently physical when used in a property insurance contract." *WTC*, 445 F. Supp. 2d at 349. The opinion does not ever state that the use of the word "physical" had any relevance to the court's determination. Indeed, Judge Mukasey is quite clear about the reasons for the ruling and "physical" was not discussed at all. *See id.* at 350. It is plain to see that the word "physical" contributed nothing to the underlying rationale. The ruling was based on the fact that the policy only allows for reductions in value while economic obsolescence could mean either positive or negative effect on value and that the term "market value" could have been added if that was what the parties intended.

Defendant's second argument is similarly without merit. Whatever differences there may be between New York and Michigan rules of construction are immaterial. Judge Mukasey never referred to a trade related definition of obsolescence. The only definitions used in the discussion of "obsolescence" came from New York case law. Besides, the ruling of *WTC* stands on the reasoning discussed above, not a definition of obsolescence. Thus, the difference between New York and Michigan rules of construction is immaterial.

### B. Tax and Eminent Domain Cases

Rather than rely on the holding of *WTC*, Defendant suggests adherence to two Michigan tax assessment cases that approved of calculation methods that factored in both functional and economic obsolescence. *See Fisher-New Ctr. Co. v. Michigan State Tax Comm'n*, 380 Mich. 340, 362 (1968); *Meadowlanes Ltd. Dividend Hous. Ass'n v. City of Holland*, 437 Mich. 473, 484-85. Also cited is a Sixth Circuit Court of Appeals case that recognized the using of economic obsolescence to determine value of property. *See Helmsley v. City of Detroit*, 380 F.2d 169, 172-73 (6th Cir. 1967).

For the same reasons discussed by Judge Mukasey, tax assessment cases, as well as eminent domain cases, are inapplicable. The reason is that the valuation methods used in tax assessment cases account for positive increases in market value[1] rather than just deductions from the value of the property, whereas the definition of ACV in this case does not. Given that ability to consider positive value in tax assessment cases, Judge Mukasey concluded that, "[t]he distinction between the two forms of obsolescence is simply not as important in the appraisal setting because nothing of consequence turns on the distinction." *WTC*, 445 F. Supp. 2d at 351.

Defendant's case law is vulnerable to the same criticism. Unlike the definition of ACV, the methodology used for tax assessment allows for the consideration of positive value. Additionally, the court's discussion of economic obsolescence in *Meadowlanes* came in regards

---

[1]Positive value is accounted for in two ways in tax assessment cases. First, the replacement cost, less depreciation, is added to the market value of the land to reach the total market value. Thus, positive increases in economic obsolescence may be reflected in increased value of the land. Second, "replacement cost new less depreciation" allows market value to be calculated by "income capitalization." This method determines market value by examining the actual income versus the operating expenses of the property, which also allows for a positive increase in the market value of the property thanks to an increase in the projected income.

to determining the true cash value.  *See Meadowlanes*, 437 Mich. at 484-485.  The same is true of *Fisher-New Center.*  *See Fisher-New Ctr. Co.*, 380 Mich. at 362.  True cash value and the definition of ACV are very different measures since, as noted by Plaintiff, these cases are subject to the statutory definition at MCL 211.27, whereas the definition of ACV in this case is not.  So, the fact that tax assessment cases included economic obsolescence is of no help to Defendant.

The reasoning of *WTC* is sound and properly applied to the present case.  Defendant's attempts at distinguishing *WTC* are unconvincing.   Additionally, the Court denies the applicability of tax assessment cases.  Without any controlling authority before it, the Court adopts   the   thorough   and   well-reasoned   opinion   of   Judge   Mukasey.  As such, the holding of *WTC* will be applied to the facts of the current case.

### C. Application of WTC

Just as in *WTC*, the definition of ACV in the present case uses "replacement cost less" language, so it also anticipates only decreases in value from the four factors listed.  Thus, the same reason for finding that the contract did not include economic obsolescence is applicable to the present case.  What this Court finds most compelling is the disbelief that the parties ever intended for economic obsolescence to determine ACV.  Though not synonymous, the Court agrees with Plaintiff's claim that Defendant's attempts to introduce economic obsolescence are essentially aimed at equating ACV into market value.  While the parties have not explicitly stated as much, the discrepancy in value appears to come from a decrease in market value of property where the building was located.

It is clear that the ACV is meant to be something other than market value.  The parties are sophisticated and could have included this term if so desired, but they did not.  The parties'

reason for defining ACV as they did are unknown to the Court, but perhaps they wanted to control for the risk that is introduced by the fluctuations in market value.  The present case is illustrative of that risk as the inclusion of economic obsolescence would result in a $1,580,069.62 difference in value.  Regardless of the reasons, Defendant's failure to include the term "market value" may not now be remedied by a strained reading of the term obsolescence. Only deductions for functional obsolescence shall be taken into account in determining the ACV.

**IV.      CONCLUSION**

For the reasons stated, Plaintiff's Motion for Summary Judgment [#10] is GRANTED. Defendant's Motion for Summary Judgment [#8] is DENIED.

SO ORDERED.

Dated:  July 29, 2013

                                                    S/Gershwin A. Drain
                                                    GERSHWIN A. DRAIN
                                                    UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 29, 2013, by electronic and/or ordinary mail.

S/Tanya Bankston
Deputy Clerk